This case on our docket is Canada Hockey, LLC v. Texas A&M University. Ms. Goldenberg. May it please the Court, Eileen Goldenberg on behalf of the plaintiffs. The District Court erred in ruling that Texas A&M has sovereign immunity as to the claims asserted here, and it therefore erred in refusing to permit substitution of Texas A&M as a defendant. The Court also erred in ruling that Cannon and Stevenson have qualified immunity as to the copyright claims asserted against them. Texas A&M lacks sovereign immunity for multiple reasons, and I'd like to focus today on the first of those. That's the validity of Congress's abrogation of sovereign immunity in the Copyright Remedies Act under the analysis set forth in United States v. Georgia. I'll then touch on the other bases for finding that sovereign immunity is no bar to asserting the relevant claims against Texas A&M. The analysis in Georgia, which gives force to Congress's abrogation of sovereign immunity, where the conduct alleged to be a statutory violation also amounts to a violation of the 14th Amendment, is an important route for holding states accountable for copyright infringement that they would otherwise carry out with impunity. And it's especially important in a case like this one, which involves egregious infringing conduct, including removing copyright information from a work, changing the byline, retyping it, and passing it off as belonging to the athletic department for fundraising purposes, and that drained all the value from the copyright here. If the egregious infringement here doesn't qualify under the Georgia analysis, then no copyright infringement will, and that would leave states free to play copyrighted songs, air copyrighted movies, copy copyrighted textbooks and hand them out to their students, and otherwise act with impunity from the copyright laws, which in turn undermines the copyright right in general and decreases the incentive for creation of new creative works. Now the district court erred in a number of ways in the Georgia analysis, but first I'd just like to touch on the state's argument that somehow the sovereign immunity issues aren't presented in this case. And I don't think there's any need to linger over that argument. The district court ruled on the sovereign immunities here in granting a motion to dismiss, in denying reconsideration, and then in granting a Rule 54B judgment. Plaintiffs requested substitution of Texas A&M University in the response to the motion to dismiss, in oral argument on the motion to dismiss, and in seeking reconsideration. And so the issue of whether Texas A&M should have been substituted was amply raised, preserved, and ruled on here. Now the district court thought that the Georgia analysis somehow did not apply to the Copyright Remedies Act, and I think some of the state's arguments echo that, and that is in error. I want to be very clear. Your cause of action hinges on the Copyright Remedies Act. Is that correct? The argument for abrogation of state sovereign immunity as to the copyright claims does rely on Congress' statements in the Copyright Remedies Act. That's correct, yes. And so you're not suing under 1983. You're not suing directly to enforce the 14th Amendment. You're bringing it under the Copyright Remedies Act. Well, we're in copyright claims. The abrogation of sovereign immunity is found in the Copyright Remedies Act. Yes, and then we also have a direct claim brought under the Constitution, a takings claim that's separate from what I'm talking about right now. Right. This argument is only about the abrogation of sovereign immunity as to the copyright claims. And that's what I want to ask, because I'm having a difficult time seeing how that statute was not ruled unconstitutional in Allen v. Cooper. And they didn't talk about Georgia. They didn't say it's okay for intentional claims, intentional takings of violations of copyright. They said unconstitutional. They said Congress didn't make the requisite findings. So if that act is unconstitutional with respect to abrogation of sovereign immunity, how can you bring this claim under that act? So I don't think the Supreme Court in Allen v. Cooper ruled that the act is unconstitutional. That's what they said. Well, what they were addressing in that case was one of two routes to abrogation of state sovereign immunity. And the decision is very clear about this, and I'll point you to the correct passage. There are two routes. One is under Georgia, which is a sort of as-applied abrogation of state sovereign immunity that says in this case the conduct that's alleged to violate the copyright statute also amounts to a constitutional violation. The other is so-called prophylactic abrogation in which Congress says every copyright claim that anyone wants to bring against the state is allowed because there's a widespread problem of unconstitutional action, which we are attempting to remedy. The only issue that was addressed in Allen v. Cooper was the second, the prophylactic abrogation. Allen v. Cooper didn't overrule Georgia, and it just didn't talk about the Georgia argument, except in one place that I'll mention in a moment, because that argument was not preserved before the Supreme Court. And if you look at the oral argument in Allen v. Cooper before the Supreme Court, which I recognize is not the court's definitive statement, but nevertheless – Well, it's the exchange with Justice Breyer. There was an exchange with Justice Breyer and with Justice Kavanaugh where it was clear, first of all, that the Georgia argument wasn't before the court because it wasn't properly raised in that case by the plaintiffs. But second of all, that the court considered Georgia to be an important safety valve to the ruling that the court then made about how there was no prophylactic abrogation of sovereign immunity because it allows in an egregious case – and of course it's not every case where someone is going to be able to say there was a violation of copyright rights, a violation of the copyright statute, and that amounts to a constitutional violation. It takes a pretty egregious copyright violation to get you there, so it's going to be a pretty rare circumstance. But the court thought it was a safety valve so that states didn't run wild just taking everyone's copyrights in the way that I described a little earlier in my argument. So in Allen v. Cooper, the court does point to this. It says at page 1004, Congress can permit suits against states for actual violations of the rights guaranteed in Section 1. That's the Georgia argument. And then it says, or Congress can prophylactically abrogate sovereign immunity across the board. And then it goes on to only discuss prophylactic abrogation, which again was the only argument raised there. The congruence and proportionality test, which the court talks about in Allen v. Cooper, is a test about prophylactic abrogation of sovereign immunity. And the other place to look to see that these are two different routes, I think, is Georgia itself. Georgia says some members of the court may have disagreed about when prophylactic abrogation is appropriate. But no one doubts that in a case in which the very statutory violation that's alleged also amounts to a constitutional violation, that Congress can abrogate state sovereign immunity in that circumstance. And the immunity abrogating language at issue in the statute that the Georgia court was considering, which was Title II of the ADA, is virtually identical to the immunity abrogating language in the Copyright Remedies Act. It simply says there shall be no state sovereign immunity, and that's it. So I don't think there's any way to read Allen as somehow wiping the CRCA off the books. And in fact, of course, it's never true that a decision by a court that says that Congress's authority has been exceeded in some respect or that some other legislative body's authority has been exceeded in some respect actually wipes a statute off the books. It doesn't do that. So here we know the statute doesn't meet the congruence and the proportionality test, but it does meet the requirements of Georgia, which provides, as I said, for a form of as-applied abrogation. And so the statutory language is still in the U.S. Code, and it still has force, and Georgia is binding precedent that binds this court. For the same reasons, this court's decision in Chavez is basically exactly the same analysis I've just described. That was a case about prophylactic abrogation. It was actually decided before Georgia was decided. And so the court's decision in that case, just like Allen, doesn't tell us anything about whether the Georgia route, the as-applied route to abrogation of state sovereign immunity, is relevant. The district court was under the impression that somehow Georgia is limited to Title II of the ADA, and that is not correct. Other courts of appeals have applied the Georgia analysis to various other statutes, including the Eleventh Circuit has applied it to the CRCA itself. So exactly what we're asking this court to say is proper here. And so if this court were to say that somehow it didn't apply to the CRCA, that would create a circuit split. And in addition, I think it's important to note that the standard in Georgia is met here. Because, as I said, the standard in Georgia is, does the conduct that is alleged to violate the copyright laws also amount to a constitutional violation? The district court concluded that it did. And as to the due process clause, there's a non-negligent deprivation of copyright alleged, which the Supreme Court has told us is property for constitutional purposes. And there isn't an adequate and meaningful state remedy for that deprivation, especially now that the Texas Supreme Court has told us that a per se takings claim based on a copyright violation will not fly. And a regulatory takings claim is unlikely to be deemed viable. The only argument that the state has made in this court with respect to the argument that the conduct that violates the copyright laws also amounts to a due process violation, is that plaintiffs can't assert due process as a basis for the Georgia argument without having formally brought a separate due process claim in their complaint. That is plainly incorrect. The question about whether there's a constitutional violation under Georgia is a question of congressional authority and congressional power. It's not about whether there's going to be recovery on a constitutional claim against a defendant in this case. So if there's a constitutional claim made out by the facts here, then Congress is entitled to say, as it did in CRCA, your statutory claim can proceed. And there are often antecedent questions of this kind embedded in legal doctrines. For instance, you might need to show fraud in order to pierce the corporate veil, but that doesn't mean that you need to allege a fraud claim in order to pierce the corporate veil. Here, the complaint does contain allegations that support this due process violation, and I point in particular to ROA 345, which says that there are not adequate state remedies here for the deprivation that's occurred. So I think the state has waived other arguments relating to the due process clause, and so I think the Georgia test is satisfied. Through that route, the copyright-violating conduct also amounts to a violation of the due process clause, and so under Georgia, state sovereign immunity is abrogated. And the court doesn't need to go further to decide that the state sovereign immunity for copyright claims is abrogated, although we also have arguments which are set forth in our briefs that there's a takings violation too here on the basis of the facts that are alleged to be the violation of the copyright laws. And I point in particular on the takings point just briefly to Ruckelshaus v. Monsanto, which found the taking of trade secrets—that's a Supreme Court decision— and set forth a number of factors that show that this is also a taking here. And we've also made two other sovereign immunity arguments that I'd like to touch on. I see my time is running short. One is—and now I'm moving away from the copyright claims to the separate takings claim against the defendants. We've identified a basis for finding sovereign immunity abrogated as to the direct takings claim here as well. So a takings claim against a state should be permitted to proceed in federal court despite sovereign immunity if the state courts are closed to the claim. So you have to be able to bring a takings claim somewhere under the federal Constitution.  And if the state courts are closed, then the federal court should open because otherwise there is no place for the claim to be heard, and that is not what the Constitution has in mind when it sets forth that just compensation right. There is not a lot of law about what it means for state courts to be closed to a claim, but we've identified what we think is a very good analogy in this court's case law, and that relates to the fact that there used to be—there isn't any more after the Supreme Court's decision in Nick— but there used to be a requirement when you had a takings claim that before you brought it to federal court, you went and exhausted it in state court and got what you could out of the state courts before you went to federal court. And this court looked at that and identified some situations where you didn't have to go to state court to exhaust your claim because it was essentially futile to do so. And one of the things the court said was, well, if a claim almost certainly can't succeed in state court, then you don't have to go exhaust your claim in state court. It's futile. And we think that should carry over to this analysis of whether the state courts are actually open to this claim or not. And here, after the Texas Supreme Court decision in Jim Olive, which was just a week or so ago, and we noted for the court in a 28-J letter, we think that takings claim almost certainly cannot succeed in state court. That's what the Texas Supreme Court is telling us, and so that's another reason— Wasn't there a concurring opinion which said that in some circumstances, you may be able to show a violation for which compensation is appropriate? There was a concurring opinion that suggested there might be some different analysis than the majority reached, but the majority didn't adopt the analysis in that concurring opinion, and the majority treated the takings clauses under the federal constitution and the Texas constitution as basically equivalent to each other and having the same test. The majority did have a footnote in its opinion. It's footnote 10 of the Texas Supreme Court's opinion that says, well, we've just explained to you that there's no per se taking based on a copyright. That doesn't happen. Could there be a regulatory taking? We're not expressing an opinion on that here, but I would read that footnote as expressing some dubiousness on that point and suggesting that it's going to be a very rare case indeed where that's going to fly, especially given that the majority only assumed that copyrights are property for purposes of the takings clause. It didn't even decide that copyrights are property for purposes of the takings clause in that decision. So I think all of that shows that the Texas courts are closed to this takings claim, and so the federal court needs to open up. And if the court were to reject both of the foregoing arguments, then it would need to grapple with the third sovereign immunity argument we make in our brief, which is whether the state should be entitled to sovereign immunity here in the first place. Our argument is that even if Texas A&M is substituted in as the defendant, the six-part analysis that asks whether sovereign immunity applies should be carried out with respect to the department, the athletic department, which is the entity that engages in the wrongdoing. And that reconciles two different strands of this court's authority. This court has held that an entity's juror authority, authority to be sued, is governed by state law. So a state can decide that an entity doesn't have the capacity to be sued, and that governs. At the same time, this court has made clear that juror authority is only one part of what the court looks at for the federal sovereign immunity analysis. So it doesn't govern the question of federal sovereign immunity. And this court has, in cases that we cite in our briefs, noted that an entity doesn't have juror authority but still proceeded to analyze it under the six-factor test. And we think the best way to reconcile those is to say that even if the entity that carried out the challenge conduct can't be sued as a matter of state law so that another entity needs to be substituted in its place, you still look at the bad actor entity to see whether sovereign immunity is warranted. That ensures that the federal sovereign immunity analysis isn't dictated entirely by state law. But just to circle back around to where we started, I think it's just clear and compelling here, and you can see from the amicus briefs that were submitted, that this is an important case to the copyright community, that the United States versus Georgia route needs to be left open here. Otherwise, states can violate copyrights however they want, whenever they want, and there will be no copyright law recourse against them, and that's something that's extremely damaging to copyright law and the copyright system as a whole. Thank you, Counsel. Thank you, Your Honor. May it please the Court. District courts do not write complaints. Plaintiffs do. This basic fact will resolve this appeal without needing to distinguish or otherwise engage with plaintiffs' efforts to have this Court ignore Allen, Chavez, Bay Point Properties, United States Oil, and other cases. With the Court's permission, I will use my time today to first cover briefly the pleadings-based issues with plaintiffs' appeal, then move to the constitutional arguments, and then say a few words about the two individuals who are also remaining in the case, Mr. Cannon and Mr. Stevenson. With respect to the pleadings issues, I think the first thing to keep in mind here is that this case was originally pled and still is in the operative complaint pled as a case against a private entity. That is why plaintiffs attempted to carve out what they thought would be a private entity, the Texas A&M Athletic Department, from the university itself. That is why there is no due process claim in the complaint, and that's why the only constitutional claim, the taking, is alleged in the alternative. So when we see the District Court noting in its March 2019 order on the motions to dismiss that plaintiffs have not asked and, in fact, have steadfastly refused to substitute the university, that is what the District Court is talking about. This very essence of the complaint is an attempt to proceed against a private entity, not a state entity. Plaintiffs, of course, have argued that they did ask to substitute, and I think the Court should know that what they are talking about are some stray sentences and some briefing, not an actual motion to substitute. More importantly, though, even if plaintiffs did at some point ambiguously request substitution, there is no dispute that they unambiguously unrequested it when they filed their motion for leave to amend in May of last year. What did plaintiffs say then? They explicitly told the District Court that they did not want to substitute because they believed that doing so would waive certain issues that they wanted to raise on appeal. They made an unquestionably strategic choice not to substitute, made by them and expressed to the District Court. There is no dispute that the standard of review for alleged errors under Rule 17 is abuse of discretion. Even if we put aside the fact that plaintiffs did not brief this issue on abuse of discretion, how could it possibly be an abuse of discretion for the District Court to fail to substitute when plaintiffs told the District Court that is what they did not want? Essentially, what plaintiffs are asking here is that this Court reverse Judge Hanen because he didn't shove their own lawyers out of the way and plead this case for them. Turning now to the constitutional issues, we can first address United States v. Georgia. Here, I think it is telling that plaintiffs put this case at the center of their arguments for reversal, but they are not even faithful to the very specific pleading requirements that are actually set out in United States v. Georgia. Plaintiffs say that Georgia did not concern itself with the pleadings, but Georgia itself says otherwise. There is an entire paragraph at the end of the opinion where Justice Scalia explains what is supposed to happen on remand. The exact language is that the lower courts are to determine on a claim-by-claim basis. That is the exact phrase, claim-by-claim basis, which aspects of the conduct are alleged to violate the statute, which in that case was the ADA, and to what extent such misconduct also violates the 14th Amendment. We know that plaintiff's complaint was not drafted to meet any kind of Georgia standard because, again, the whole point was to proceed against a private entity. Essentially, they are trying to take a complaint that was supposed to be against a private entity and retrofit it into a Georgia theory, and no surprise that that is pretty difficult to do. The best roadmap for this kind of pleadings-based analysis of Georgia is that pharmacy board case from the 11th Circuit. What the 11th Circuit actually did in that case, they accepted the Georgia argument. This was pre-Allen, so to Your Honor's point, they are not going up against Allen. This is pre-Allen. They said, okay, we're going to apply the Georgia analysis to the CRCA, to the Copyright Act. But you know what? In that case, the allegations of copyright infringement did not map specifically to a due process claim because in that case they were discussing a post-deprivation process, and that type of post-deprivation process analysis did not match up at all with what would have constituted a copyright infringement under the statute. So again, even the 11th Circuit, pre-Allen, when it's applying this Georgia analysis to the CRCA, is determining that the claims have to match up, and it's finding, of course, that a procedural due process claim does not match up with a copyright infringement claim. So again here, plaintiffs don't even make a due process claim, and I think this point about the pleadings is a little too, is a bit of a misnomer that plaintiffs have alleged that we simply, they do need to plead a due process claim. That's true. But even if you were to accept that somehow this court could mine their own complaint for them and try to find one and cobble it together to meet this Georgia analysis, even if the court were inclined to do that, it's not there. There's no mention of pre-deprivation process, post-deprivation process. There's nothing about any of those things because when the court looks at the complaint, it's clearly designed to go against a private entity. Again, they're retrofitting these theories and they don't fit. I will say with respect to this, the idea that maybe a takings claim could somehow satisfy the Georgia standard, that's not going to work either. This court said clearly in the Porter case that copyright infringement is generally in the nature of a tort, not a taking. That's a pretty standard analysis. That's essentially what the court held, the Texas Supreme Court held, and Jim Olive, that simply alleging a copyright infringement is not going to constitute a per se taking, so the takings claim is not going to map up either, even if we were to indulge in this idea that somehow we can ignore Allen in favor of Georgia. It's not going to work based on the pleadings. A couple of other differences between this case and Georgia that I think also makes plaintiffs' arguments irrelevant. First of all, we have to recognize that Georgia was dealing with a statute that was explicitly passed pursuant to Congress's power under Section 5 of the 14th Amendment, explicitly dealing with the ADA. And multiple courts, of course, in addressing the Copyright Remedy Clarification Act, have noted that Congress was likely acting pursuant to its powers under Article I. They were acting prior to Seminole Tribe, and the idea is that they probably thought that acting pursuant to Article I powers was going to pass constitutional muster. So in this case, we don't even have a statute where Congress is explicitly acting pursuant to its authority under Section 5 to enforce the 14th Amendment. In addition, second key distinction, the remand for possible ad hoc abrogation that was permitted in Georgia was granted before deciding the question of the constitutionality of the abrogation statute in that case. So in Georgia, the court was not ignoring or creating some kind of end run around its own decisions. It was actually avoiding the broader abrogation question by going with a more narrow analysis that was focused on the plaintiff's claims in that case. So where does all this leave us on this complicated path to reversal that the plaintiffs have laid out? Procedurally, they have failed to present these issues properly for review. Substantively, they're wrong about Georgia, and even if they were right, their own complaint doesn't match up with what Georgia would theoretically require. What's left appears to be an argument that plaintiffs should be permitted to pursue a takings claim and plaintiffs' arguments that the district court erred in dismissing the two individuals, Alan Cannon and Lane Stevenson. I will just say a brief word about the individuals in case this court has any questions on those particular issues. The district court dismissed these claims not once but twice, based not only on qualified immunity but also just straight 12B6 threadbare pleading analysis, so both of those reasons. Although this case has been on file for over four years, plaintiffs have engaged in no discovery, no discovery and have uncovered no facts that would allege any cause of action against either Mr. Cannon or Mr. Stevenson. These are both longtime public servants who are currently facing personal liability for plaintiffs' alleged damages of $784 million. And for anybody who did a double take, that is correct, claimed damages of $784 million. We think that the correctness of Judge Haynen's dismissal of these two individuals is entirely appropriate and is adequately covered in our briefs. We would certainly be happy to address any questions from the court before a brief discussion of the takings claims. With respect to the takings claims, here again, these are dismissed in the final judgment for failure to name a party with jural authority, and that alone is a proper basis to affirm. Now, plaintiffs have claimed here that perhaps jural authority should be folded into some kind of other analysis, but I think it's really important. They have not appealed the district court's finding that the entity they tried to sue has no jural authority. There's nothing there. They do not allege that the district court's finding in that respect was erroneous or mistaken. So, again, they are in charge of writing their own pleadings and determining what issues to take up on appeal. And if they haven't challenged Judge Haynen's finding that there was no jural authority, then that is not before the court and the entity has no jural authority, and that is absolutely a proper basis to affirm. This is clear from the actual final judgment itself. Judge Haynen takes pains to explain that his final judgment is entered first and foremost because they named a party that can't be sued, and then he also has a secondary conclusion that if they had named the right party, that party would be entitled to sovereign immunity. But it's in the final judgment, and that's an entirely proper basis to affirm. If the court wished to go further on the takings claims beyond the issue of jural authority, Bay Point Properties is entirely on point and completely disposes of these claims on sovereign immunity. As Bay Point Properties recognized, this court has held multiple times that simply alleging a takings claims against the state and federal court will not overcome Eleventh Amendment immunity. That was, again, reiterated quite recently. Even after Nick in Bay Point Properties, there's simply no daylight there. If the court wishes to go further still and entertain the idea that somehow we can disregard sovereign immunity if the state courts are closed, I think, again, we should recognize that what plaintiffs are suggesting is we essentially import a futility analysis from the Williamson County cases and use that. That is certainly not endorsed by any circuit, and that is not a basis on which we could find an abrogation of immunity. Those cases were dealing with whether bringing that actual claim would have been futile. That's an entirely different analysis than whether the state courts are actually going to hear a potential takings claim. What the Tenth Circuit did with that case that the plaintiffs do cite with respect to this idea that maybe, just maybe, even if sovereign immunity would foreclose the takings claims, we ought to somehow ignore it because maybe we think the state courts are closed. The Tenth Circuit in that case simply asked, is there a statute that permits taking claims? Yes, there is. They cited it, and that was the end of the analysis. So certainly in this case, Texas has said over and over again that we have waived sovereign immunity for takings claims. Those can clearly be brought. We can see that in the Jim Olive case. Those claims can be brought. What the court said, certainly in Jim Olive, is it took those cases, largely federal cases, and essentially said what this court said in Porter, which is that, generally speaking, a copyright infringement is going to be a tort. It's not going to be a taking. Now, certainly, as the court recognized in Jim Olive, it's possible that one could imagine some circumstances in which you could make out, essentially, a regulatory taking based on certain allegations. So Texas courts are certainly not closed to that, but they are simply applying federal law, which does draw a distinction between torts and takings. And I think it's interesting here that, essentially, what plaintiffs are arguing for is that we should abrogate state sovereign immunity and completely bypass Bay Point properties, not because we think necessarily the state courts are entirely closed, but because maybe, in a footnote, the Texas Supreme Court was dubious about the ability of a regulatory takings claim to proceed. And I think that certainly would be the flimsiest of bases on which this court would abrogate sovereign immunity and ignore the Eleventh Amendment and ignore its own holdings with respect to that, simply because the Supreme Court, frankly, went out of its way to express to future plaintiffs that simply pleading a per se taking may be problematic, but also notifying future litigants that, if they want to pursue these claims, that there is a potential avenue for those to be pursued. And certainly with respect to your question, Judge Graves, the concurrence not only went beyond that, asserting that there could potentially be claims for regulatory takings, but also went out of its way to inform other plaintiffs that there could be claims to be raised under the specific terms of the Texas takings clause, which does have some textual differences with the federal takings clause. So again, the Texas Supreme Court is certainly not closing its doors to takings claims. I think that's an extremely unfair reading of a very thorough and considered opinion from the Texas Supreme Court in the Jim Olive case. I think, in essence, Jim Olive is a great example of state judges acting in concert with federal judicial colleagues and interpreting federal law and taking that and applying it to those claims. There's certainly nothing about that decision that says that Texas is closing its doors. Essentially what I would say is the fact that plaintiffs are trying to make a tort into a taking is not a problem with Texas. That is a problem with their claim. Courts in Texas, courts all around the country are not going to adjudicate torts as takings. Even the United States Supreme Court in the recent Cedar Point Nursery case, where Chief Justice Roberts writing for the court did expand in some context the per se taking rule, even in that opinion the court took great pains to say we are not obliterating the distinction between torts and takings or trespass and takings as it was expressed in that case. So very recently the United States Supreme Court has again expressed that trespasses are not takings. And the example that was given in that case was a government employee who parked on a lot and had lunch there. That was the analogy that Chief Justice Roberts was talking about. But again, trespasses and torts are not takings, and that's not an issue with the Texas state courts. If plaintiffs have an issue with that, that's an issue with federal law, as this court has already said in Porter. So I would simply urge the court to affirm Judge Hannon's entirely correct dismissal of these claims, first and foremost on the basis of jural authority. These plaintiffs tried to plead a case against a private entity, and the fact is, even once the district court told them they were wrong about that, they waited so long to fix it that the district court then said that their motion for leave to amend was too late and was prejudicial. And they don't even challenge those findings here on appeal. Certainly they could. I'm sure this court every day sees appeals where plaintiffs are alleging I moved to amend and the district judge said it was too late, but it wasn't because X, Y, Z, and I had these reasons for why it took so long. They don't even brief those issues here. So the fact that they moved to amend is not irrelevant. It is very important that they told the district court they didn't want to substitute. And when it came time to actually fix their pleadings, they waited too long. This is not the type of situation in which this court needs to step in and rewrite plaintiffs' complaint for them. I would also just, in closing, say a brief point about this idea that somehow if this claim doesn't succeed, no one can. I think exactly the opposite is true. This claim is not the vehicle to make these kind of determinations. This complaint was originally filed against a private party. Somebody tried to retrofit it into a Georgia theory, and now we're talking about abrogation. This is exactly the wrong kind of complaint to make these kinds of rulings and to make these kinds of decisions because it's not designed to fit with the theories that we're talking about here today. And there's certainly—the state of Texas does not view itself with any impunity, and certainly the state understands that it is possible to plead takings claims potentially under a regulatory takings theory. And, of course, those would have to be pled correctly and have appropriate facts. But we certainly—the issue here is that there are avenues that plaintiffs could have pursued, and they didn't do it here. And the fact that they don't win here means nothing for future copyright holders. It doesn't have to mean—it doesn't have to have a sweeping decision about future issues regarding immunity and so forth. It can be resolved in a very straightforward way based on the way that it was pled and handled below. And we would urge the court to do that here. And if the court has no further questions, I will close. Thank you. Thank you, Counsel. Just a few points. First of all, the state substitution argument here is truly extraordinary. We asked to substitute on numerous occasions, and just to give the court some places where, in response to the motion to dismiss, ROA 923, in oral argument on the motion to dismiss, ROA 570 to 571, in seeking reconsideration, ROA 1925 and 1990. And the district court repeatedly said that it would have substituted if it didn't think that the state—Texas A&M—had sovereign immunity. The district court would be amazed to find that sovereign immunity is not somehow at issue in this case. It spilled a huge amount of ink on those issues in the decision on the motion to dismiss, in the decision on the motion to reconsideration, and in granting a Rule 54B judgment. It said it was doing that so that this court could consider the sovereign immunity issues. And so it's clear that if this court found that we had a path through the sovereign immunity arguments here, that if it sent it back to the district court, the district court would substitute. The motion to amend came much later. It dealt with a number of things other than just adding Texas A&M, and the court denied it in part on futility grounds because it thought that Texas A&M had sovereign immunity. So there's no barrier to addressing the sovereign immunity issues in this case. And again, I think it's extraordinary to argue otherwise. On United States v. Georgia, it is binding precedent on this court. Allen v. Cooper didn't overrule it. And I think the state really misunderstands Georgia in a number of ways. First of all, the idea that Georgia says that you need to have pled a constitutional claim, it does not say that. When it talks about a claim-by-claim basis, what it's saying is that it is not clear what conduct the plaintiff, in that case, intended to allege in support of his statutory claims, and that on remand the court should look into that and let the plaintiff amend his complaint. It never says that a constitutional claim needs to be pled, and that would make no sense at all, because, again, this is a question of Congress's authority, its power, under Section 5 of the 14th Amendment to enforce the 14th Amendment, which it can do where there's a constitutional violation present in the case. You don't have to bring a constitutional claim to make that argument. The state also says that somehow you can't do a 14th Amendment analysis at all on the CRCA because it involved Article I. Allen proved that that's not true. Allen did do a 14th Amendment analysis on the CRCA. The congruence and proportionality analysis is a 14th Amendment analysis, and so it flies in the face of Allen to suggest that somehow that analysis is not proper here. The Pharmacy Board case, I feel the state also did not accurately describe. That involved the Eleventh Circuit rejecting a claim because it said that there needed to be a pre-deprivation remedy. Here, all of our arguments are about post-deprivation remedies, and it's the absence of an adequate post-deprivation remedy that means that there has been a due process violation on the facts alleged here. When did you first request to substitute? It was in the response to the state's initial motion to dismiss the complaint, Your Honor. Again, that's ROA 923, and then the argument was made again at oral argument on the motion to dismiss in front of the court. That's ROA 570 to 5751. And so it was raised numerous times, and the district court just said over and over and over again in its many orders, all of which, of course, are cited in the briefs, that if it did not think that Texas A&M had sovereign immunity, that it would have substituted Texas A&M in. And the state, even, in its initial motion to dismiss, ROA 595 to 596, said, of course, you can generally substitute, but here you can't because of sovereign immunity. And so it's just entirely clear that the sovereign immunity issues were extremely thoroughly litigated. They were decided by the district court on numerous, numerous occasions. Finally, if I could just say a word about whether the state courts are closed to takings claims. I don't hear the state coming up with an alternative to the analysis that we've proposed, the exhaustion analysis, as an analogy to try to figure out when state courts are closed to claims. It's not something that comes up very often. And here, Jim Olive is not an answer because it dismisses out of hand the idea of a per se takings analysis. It doesn't even agree, even though the Supreme Court said it in Allen v. Cooper, that copyrights are even property, and is very dubious about the possibility of a regulatory takings claim. And we think that's enough for the state courts to be closed, and that's our separate argument about sovereign immunity on the takings claim. Thank you.